*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

FOR PUBLICATION
January 18, 2024

v

No. 352569
Wayne Circuit Court
LC No. 02-000893-02-FC

JOHN ANTONIO POOLE,

        Defendant-Appellant.

Before: LETICA, P.J., and BORRELLO and RIORDAN, JJ.

RIORDAN, J. (*dissenting*).

I respectfully dissent.

Defendant John Antonio Poole appeals by leave granted[1] an August 2, 2019 order returning to defendant his third motion for relief from judgment without accepting it for filing pursuant to MCR 6.502(G).

On July 30, 2002, defendant was found guilty of first-degree premeditated murder, MCL 750.316, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Next, on August 13, 2002, defendant was sentenced to mandatory life imprisonment without the possibility of parole for his first-degree murder conviction, 24 to 90 months' imprisonment for his felon in possession of a firearm conviction, and two years' imprisonment for his felony-firearm conviction. This Court affirmed his convictions on direct appeal. *People v Poole*, unpublished per curiam opinion of the Court of Appeals, issued December 5, 2005 (Docket No. 244023) (*Poole I*).

In this appeal, defendant argues that, because he was 18 years old when he committed the offenses, he is entitled to resentencing under *People v Parks*, 510 Mich 225; 987 NW2d 161

---

[1] See *People v Poole*, unpublished order of the Court of Appeals, entered August 25, 2022 (Docket No. 352569).

(2022), which held that mandatorily subjecting 18-year-old defendants[2] convicted of first-degree murder to life imprisonment without parole was unconstitutionally cruel punishment under Const 1963, art 1, § 16. In particular, defendant argues that (1) *Parks* applies retroactively on collateral review, and (2) he is entitled to resentencing because of new scientific evidence about the alleged infirmities of the brains of 18-year-olds.

Unlike the majority, I conclude that defendant is not entitled to resentencing because *Parks* does not apply retroactively on collateral review. Further, defendant did not raise below the alleged new evidence about brain science to which defendant now claims was the basis for the decision in *Parks*, and thus it is not properly before us on this appeal. In a nutshell, the sole issue before this Court is whether *Parks* applies retroactively and, as noted, after a thorough and careful consideration of our Court's binding precedent, I believe that *Parks* does not apply retroactively on collateral review and does not apply to the matter before us.[3]

Thus, I would vacate the trial court's order returning to defendant his third motion for relief from judgment without accepting it for filing, and remand the case to the trial court with instructions to accept his motion for filing and then to deny the motion in accordance with this dissent.[4]

## I. FACTS AND PROCEDURAL HISTORY

---

[2] As with our Supreme Court in *Parks*, I will, for ease of discussion, sometimes use a phrase such as "18-year-old defendants" to refer to those defendants who committed first-degree murder when they were 18 years old, even though such defendants may have been older when sentenced.

[3] As explained *infra*, our Supreme Court did not expressly direct us to consider the issue of retroactivity, but as the parties themselves recognize, any cogent analysis of this case requires such consideration.

[4] The procedural posture of the matter before us is unusual and confusing, but that is because our Supreme Court's order remanding the case to us requires an irregular procedure. Upon determining that defendant is entitled to file his third motion for relief from judgment, it would have been more appropriate to remand the case to the trial court to accept the motion for filing and then decide the motion, without an opinion from this Court on the merits of defendant's arguments. The motion was presented to the trial court and has not yet been decided by that court. Given that the motion was returned without filing rather than there being a decision on the merits, it runs counter to the usual appellate procedure of a lower court first deciding a disputed issue prior to this Court's consideration. But, our Supreme Court has instructed this Court to determine whether defendant is entitled to relief under *Parks*, see *People v Poole*, ___ Mich ___; 977 NW2d 530 (2022) (*Poole II*), and this Court is, of course, obligated to comply strictly with our Supreme Court's remand instructions, *Int'l Business Machines Corp v Dep't of Treasury*, 316 Mich App 346, 352; 891 NW2d 880 (2016). Accordingly, we have no choice but to address the appeal as directed by our Supreme Court. In other words, we have no choice but to put the cart before the horse.

Defendant was born on January 8, 1983. He committed the instant offenses on December 12, 2001, i.e., less than a month before his 19th birthday.[5]

This Court affirmed his convictions on direct appeal. *Poole I*, unpub op at 1, 5. The issues raised in his direct appeal were not related to his sentences and are not relevant to this appeal. Defendant filed an application for leave to appeal in our Supreme Court, which denied the application. *People v Poole*, 476 Mich 863 (2006).

On August 6, 2007, defendant filed his first motion for relief from judgment, again raising issues that are not relevant to this appeal. On November 28, 2007, the trial court denied his first motion for relief from judgment. On June 9, 2008, defendant filed a delayed application for leave to appeal. This Court denied the delayed application "because defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v Poole*, unpublished order of the Court of Appeals, entered October 8, 2008 (Docket No. 285843). Our Supreme Court denied leave to appeal. *People v Poole*, 483 Mich 1107 (2009).

On October 23, 2015, defendant filed his second motion for relief from judgment, and he again raised issues unrelated to sentencing and not relevant to this appeal. On December 7, 2015, the trial court denied the second motion for relief from judgment. Apparently, defendant did not appeal the order denying his second motion for relief from judgment.

In 2019, defendant attempted to file a third motion for relief from judgment.[6] As later summarized by our Supreme Court, the third motion for relief from judgment "challenge[d] the validity of his mandatory life-without-parole sentence in light of *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), which was determined to be retroactively applicable to cases on collateral review in *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016)." *Poole II*, 977 NW2d at 531.[7] On August 2, 2019, the trial court entered its order returning to defendant his third motion for relief from judgment without accepting it for filing.

On February 3, 2020, defendant filed a delayed application for leave to appeal, arguing that the trial court abused its discretion by returning the motion to him without accepting it for filing. On the same date, defendant filed a motion to hold his appeal in abeyance pending another case. In particular, defendant requested that his appeal be held in abeyance pending a decision of our

---

[5] The underlying facts of the murder are not directly relevant to the purely legal issues in this appeal. I briefly note, however, that defendant fired four shots at the victim and killed him after being hired to commit the murder by his uncle in return for a payment of $300.

[6] The motion was signed by defendant on January 29, 2019, but the motion was not filed in the trial court and is not shown on the register of actions. As noted, the trial court's order from which this appeal arises returned the motion to defendant without accepting it for filing.

[7] The United States Supreme Court held in *Miller*, 567 US at 465, that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' "

-3-

Supreme Court in *People v Manning*, 505 Mich 881 (2019), in which the Court had scheduled oral argument on the application for leave to appeal and directed the parties to address:

> (1) whether the defendant's successive motion for relief from judgment is "based on a retroactive change in law," MCR 6.502(G)(2), where the law relied upon does not automatically entitle him to relief; and (2) if so, whether the United States Supreme Court's decisions in [*Miller*] and [*Montgomery*] should be applied to 18-year-old defendants convicted of murder and sentenced to mandatory life without parole, under the Eighth Amendment to the United States Constitution or Const 1963, art 1, § 16, or both.

Later, after hearing oral argument on the application for leave to appeal in *Manning*, our Supreme Court denied leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v Manning*, 506 Mich 1033, 1033 (2020).

On May 1, 2020, this Court in the present case entered an order stating, in relevant part:

> The motion to hold this matter in abeyance and the delayed application for leave to appeal are DISMISSED. Defendant has failed to demonstrate the entitlement to an application of any of the exceptions to the general rule that a movant may not appeal the denial of a successive motion for relief from judgment. See MCR 6.502(G). . . . [*People v Poole*, unpublished order of the Court of Appeals, entered May 1, 2020 (Docket No. 352569), vacated & remanded, ___ Mich ___; 977 NW2d 530 (2022).]

On June 25, 2020, defendant filed an application for leave to appeal in our Supreme Court. On June 23, 2021, our Supreme Court granted the application for leave to appeal and directed him to file a supplemental brief addressing:

> (1) whether the defendant's successive motion for relief from judgment is "based on a retroactive change in the law," MCR 6.502(G)(2), where the law relied upon does not automatically entitle him to relief; and (2) if so, whether the United States Supreme Court's decisions in [*Miller*] and [*Montgomery*] should be applied to defendants who are over 17 years old at the time they commit a crime and who are convicted of murder and sentenced to mandatory life without parole, under the Eighth Amendment to the United States Constitution or Const 1963, art 1, § 16, or both. [*People v Poole*, 507 Mich 993, 993-994 (2021).]

After briefing by the parties and numerous amici curiae, our Supreme Court held oral argument in this case on March 2, 2022, the same day as *Parks*. On July 28, 2022, our Supreme Court entered an order vacating this Court's May 1, 2020 order and remanding the case to this Court for further proceedings consistent with our Supreme Court's order. *Poole II*, 977 Mich at 530. Our Supreme Court provided the following reasoning:

> [Defendant] was convicted of first-degree murder, MCL 750.316, after his older uncle paid him to kill the victim, and defendant was given a mandatory sentence of life imprisonment without the possibility of parole. Defendant was 18 years old at

the time of the murder. The Court of Appeals affirmed his convictions on direct appeal, and we denied leave to appeal. *People v Poole*, unpublished per curiam opinion of the Court of Appeals, issued December 5, 2005 (Docket No. 244023), lv den 476 Mich 863 (2006). Defendant has twice previously moved for relief from judgment, pursuant to MCR 6.500 [sic[8]]. This is his third such motion. Defendant challenges the validity of his mandatory life-without-parole sentence in light of [*Miller*], which was determined to be retroactively applicable to cases on collateral review in [*Montgomery*]. The trial court returned his motion, determining that *Miller* was not retroactively applicable to defendant's case. The Court of Appeals dismissed defendant's delayed application for leave to appeal, because defendant improperly sought to appeal the rejection of a successive motion for relief from judgment, citing MCR 6.502(G).

We conclude that the Court of Appeals erred by dismissing defendant's application for leave to appeal, because defendant has met the requirements necessary to file a successive motion for relief from judgment pursuant to MCR 6.502(G)(2). Specifically, we conclude that, as defendant argues for *Miller*'s protections to be extended to 18-year-old offenders, *Miller* and *Montgomery* serve as the "foundation" or "base" for defendant's challenges to the constitutionality of his mandatory life-without-parole sentence; thus, his motion is "based on a retroactive change in law" and overcomes the procedural bar in MCR 6.502(G). [*People v Stovall*, 510 Mich 301, 310; 987 NW2d 85 (2022)] (concluding that *Miller* and *Montgomery* served as the "foundation" or "base" for the juvenile defendant's challenge to his life-with-parole sentence for second-degree murder). The trial court and the Court of Appeals erred by concluding otherwise.

Therefore, because the merits of defendant's motion were never considered under MCR 6.500 [sic], on remand, the Court of Appeals shall determine whether defendant is entitled to relief based on our holding in [*Parks*] that mandatory life-without-parole sentences imposed on 18-year-old defendants are categorically disproportionate and thus unconstitutional under Const 1963, art 1, § 16. Under *Parks*, such offenders are entitled to the full protections and procedures afforded to juveniles in Michigan's sentencing scheme, MCL 769.25, including a consideration of the attributes of youth as described in [*Miller*] prior to the imposition of a sentence for first-degree murder. The Court of Appeals shall determine what remedy, if any, is available to defendant under *Parks*, including whether defendant should be resentenced pursuant to MCL 769.25a.

We do not retain jurisdiction. [*Id*. at 530-531.]

Three justices dissented in *Poole II*. In his dissent, JUSTICE VIVIANO opined that defendant had not overcome the procedural bar of MCR 6.502(G) to filing a successive motion for relief from judgment. *Poole II*, 977 NW2d at 531 (VIVIANO, J., *dissenting*). But even if defendant had

---

[8] There is no such thing as "MCR 6.500." Our Supreme Court presumably intended to refer to MCR *subchapter* 6.500, or perhaps MCR 6.501 *et seq*.

overcome the procedural bar, JUSTICE VIVIANO would have concluded that defendant's constitutional argument failed for the reasons stated in then-JUSTICE CLEMENT's dissent in *Parks*. *Id*.

Then-JUSTICE CLEMENT separately dissented, joined by JUSTICE ZAHRA, agreeing with the majority that defendant had overcome the procedural bar of MCR 6.502(G) but opining that, for the reasons stated in then-JUSTICE CLEMENT's dissent in *Parks*, defendant was not entitled to relief on the merits. *Poole II*, 977 NW2d at 531-532 (CLEMENT, J., *dissenting*). Then-JUSTICE CLEMENT stated that defendant "was 18 years old when he committed first-degree murder" and was "constitutionally subject to the mandatory sentence of life imprisonment without the possibility of parole that the Legislature has set out." *Id*. at 532. Then-JUSTICE CLEMENT and JUSTICE ZAHRA thus would have denied leave to appeal in lieu of remanding the case to this Court. *Id*. She further noted that "under *Parks*, it is only *mandatory* life without parole that is unconstitutional for 18-year-old offenders. Just as with juvenile offenders, courts can sentence 18-year-old offenders to life without parole. See MCL 769.25." *Id*. at 532 n 2.

On remand from our Supreme Court, this Court entered an order denying as moot defendant's motion to hold the appeal in abeyance for *Manning* and granting the delayed application for leave to appeal. *People v Poole*, unpublished order of the Court of Appeals, entered August 25, 2022 (Docket No. 352569). The order stated that the appeal was not limited to the issues raised in the application and that, in their appellate briefs, the parties were to address the issues specified by our Supreme Court in *Poole II*. *Id*.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for relief from judgment is reviewed for an abuse of discretion. *People v Clark*, 274 Mich App 248, 251; 732 NW2d 605 (2007). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014) (citation omitted). "The retroactive effect of a court's decision is a question of law that this Court reviews de novo." *People v Quinn*, 305 Mich App 484, 489; 853 NW2d 383 (2014) (quotation marks and citation omitted).

## III. DISCUSSION

### A. COLLATERAL REVIEW

MCR 6.502(G)(1) states, "Except as provided in subrule (G)(2), regardless of whether a defendant has previously filed a motion for relief from judgment, after August 1, 1995, one and only one motion for relief from judgment may be filed with regard to a conviction." MCR 6.502(G)(2) currently provides, in relevant part:

A defendant may file a second or subsequent motion based on any of the following:

(a) a retroactive change in law that occurred after the first motion for relief from judgment was filed,

-6-

(b) a claim of new evidence that was not discovered before the first such motion was filed, or

(c) a final court order vacating one or more of the defendant's convictions either described in the judgment from which the defendant is seeking relief or upon which the judgment was based.[9]

As noted, our Supreme Court determined that defendant has satisfied the requirement to file his third motion for relief from judgment pursuant to MCR 6.502(G)(2), i.e., defendant has overcome the procedural bar of MCR 6.502(G) on successive motions and thus is permitted to file his third motion for relief from judgment. See *Poole II*, 977 NW2d at 531, citing *Stovall*, 510 Mich at 310. However, as directed by the Supreme Court, we must address the unanswered question, whether defendant is entitled to relief under MCR 6.508(D).

MCR 6.508(D) provides, in relevant part:

The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

\* \* \*

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. . . .

As relevant here, "actual prejudice" means that, "in the case of a challenge to the sentence, the sentence is invalid." MCR 6.508(D)(3)(b)(*iv*).

In this third motion for relief from judgment, defendant argues that his mandatory life-without-parole sentence is invalid because he was 18 years old when he committed the offense. In remanding the case to this Court, our Supreme Court has instructed this Court to "determine whether defendant is entitled to relief based on our holding in [*Parks*] that mandatory life-without-parole sentences imposed on 18-year-old defendants are categorically disproportionate and thus unconstitutional under Const 1963, art 1, § 16." *Poole II*, 977 NW2d at 531 (emphasis omitted).

---

[9] When defendant attempted to file his third motion for relief from judgment in 2019, MCR 6.502(G)(2) provided, in relevant part, that "[a] defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion."

-7-

Our Supreme Court noted that "[u]nder *Parks*, such offenders are entitled to the full protections and procedures afforded to juveniles in Michigan's sentencing scheme, MCL 769.25, including a consideration of the attributes of youth as described in [*Miller*], prior to the imposition of a sentence for first-degree murder." *Id*. This Court is to "determine what remedy, if any, is available to defendant under *Parks*, including whether defendant should be resentenced pursuant to MCL 769.25a." *Id*.[10]

In doing so, with this ambiguous language, our Supreme Court did not expressly tell us that *Parks* should be applied retroactively, nor did it expressly direct us to determine whether *Parks* must be given retroactive effect.[11] But, nonetheless, to comply with the Supreme Court's directive, we must do so. In that regard, I initially note that the post-conviction procedure set forth in MCR 6.501 *et seq*., is similar to the federal procedure, see *People v Reed*, 449 Mich 375, 379; 535 NW2d 496 (1995), but that our Supreme Court now apparently has decided to deviate its approach from the basic principles applied by the federal courts when addressing such similar procedural matters. In the federal courts, a movant cannot satisfy 28 USC 2244(b)(2)(A), the federal analog to MCR 6.502(G)(2), unless, at the time the motion was attempted to be filed, the new rule of constitutional law had already been made retroactive. See *Tyler v Cain*, 533 US 656, 667; 121 S Ct 2478; 150 L Ed 2d 632 (2001). See also *In re Hoffner*, 870 F3d 301, 308-309 (CA 3, 2017); *In re Moss*, 703 F3d 1301, 1303 (CA 11, 2013).

In this case, as noted, our Supreme Court concluded that defendant satisfied MCR 6.502(G)(2) and that the trial court should have accepted his motion for filing. *Poole II*, 977 NW2d at 531. In the federal courts, accepting such a successive motion for filing would mean that the new constitutional rule at issue—here, *Parks*—is retroactive by its own words. See *Tyler*, 533 US at 667-668. Thus, if we were bound by federal procedural precedent, it might be argued that the *Poole II* order, if it is considered an additional chapter to, or update of, our Supreme Court's decision in *Parks*, has already decided the retroactivity issue for us. But, the *Poole II* order does not, as we must apply the state's test for retroactivity, not that applicable to the federal courts.

Judges are presumed to know the law. See *People v Sexton*, 250 Mich App 211, 228; 646 NW2d 875 (2002). Thus, we presume that our Supreme Court is aware that our state has decades of precedent, described *infra*, regarding the retroactivity of new rules of criminal procedure. There is no language in *Parks* or any recent, related caselaw from our Supreme Court to suggest that it has considered this precedent and determined that new rules of criminal procedure such as the one set forth in *Parks* apply retroactively. Rather, as JUSTICE ZAHRA recently observed in a different case, the *Poole II* order is an "invitation" to this Court to apply *Parks* retroactively. *Stovall*, 510 Mich at 359 (ZAHRA, J., *dissenting*). Therefore, the issue of *Parks*'s retroactivity appears to be unresolved. In addition, the parties themselves have understood the primary issue in the matter

---

[10] MCL 769.25 and MCL 769.25a prescribe juvenile resentencing procedures that are consistent with *Miller* and *Montgomery*. *Parks*, 510 Mich at 240.

[11] As explained *infra*, *Parks* created a new rule of constitutional law. Indeed, *Parks* itself characterized its holding as creating a "new line." *Parks*, 510 Mich at 248. New rules of constitutional law may or may not be applied retroactively.

-8-

before us to be whether *Parks* applies retroactively. Further, although the federal caselaw previously cited suggests that the retroactivity issue has been decided because our Supreme Court directed that defendant's third motion for relief from judgment be accepted for filing, as JUSTICE VIVIANO noted in his *Stovall* dissent, no federal court in the country would adopt the reasoning of our Supreme Court in that regard. See *Stovall*, 510 Mich at 366-367 (VIVIANO, J., *dissenting*).[12] Consequently, it appears that the retroactivity of *Parks* is still undecided, federal caselaw assumptions notwithstanding. Thus, I believe that we must decide that issue here.

## B. BACKGROUND LAW

With respect to the retroactivity of judicial decisions, our Supreme Court has explained:

> Ordinarily, judicial decisions are to be given complete retroactive effect. But judicial decisions which express new rules normally are not applied retroactively to other cases that have become final. New legal principles, even when applied retroactively, do not apply to cases already closed, because at some point, the rights of the parties should be considered frozen and a conviction final. Thus, as to those cases that have become final, the general rule allows only prospective application. However, there are certain special concerns—related to collateral review of state criminal convictions—that affect how courts determine whether a case should be considered closed. In essence, these special concerns amount to exceptions to the general rule of nonretroactivity for closed cases, allowing a new legal rule to be applied on collateral review to an otherwise closed case. Both federal and state rules govern the retroactive application of new legal principles to criminal cases that are otherwise final but subject to collateral review. [*People v Barnes*, 502 Mich 265, 268-269; 917 NW2d 577 (2018) (cleaned up).]

In *Miller*, 567 US at 465, the United States Supreme Court held in 2012 "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' "

In *People v Carp*, 496 Mich 440; 852 NW2d 801 (2014), our Supreme Court addressed whether *Miller* "should be applied retroactively—pursuant to either the federal or state test for retroactivity—to cases in which the defendant's sentence became final for purposes of direct appellate review before *Miller* was decided." *Id*. at 451. After careful consideration, the Court held that *Miller* satisfied neither the federal test for retroactivity nor the state test for retroactivity. *Id*. at 528. Concerning the federal test, the Court explained that the relevant framework is set forth by Justice O'Connor's plurality opinion in *Teague v Lane*, 489 US 288; 109 S Ct 1060; 103 L Ed

---

[12] A review of caselaw leads to the conclusion that federal courts might use the word "frivolous" to describe the reasoning that the *Stovall* defendant was entitled to file his successive motion for relief from judgment. See, e.g., *In re Manning*, 24 F4th 1107, 1109 (CA 6, 2022) (explaining that the 18-year-old defendant's argument that *Miller* applies retroactively to him seeks "a frivolous extension of the new rule" because *Miller* "obviously" applies only to juvenile offenders) (quotation marks and citation omitted). By extension, that conclusion could apply to the issue presently before us.

2d 334 (1989). *Carp*, 496 Mich at 470-471. Under *Teague*, "[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id*. at 472 (cleaned up). The Court concluded that *Teague* and its progeny compelled the conclusion that *Miller* set forth a "procedural rule," not a "substantive rule," and that the defendants had not preserved any argument regarding whether *Miller* set forth a "watershed rule of criminal procedure." *Id*. at 475, 495.

Concerning the state test, the Court explained that "Michigan's test for retroactivity was originally derived from the pre-*Teague* federal test set forth in *Linkletter v Walker*, 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965)." *Carp*, 496 Mich at 496. In particular, "Michigan's test for retroactivity consists of three factors: (1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect of retroactive application of the new rule on the administration of justice." *Id*. at 497 (cleaned up). "[T]he first factor must be afforded more weight than either of the other two factors when the first factor does clearly favor retroactivity or prospectivity." *Id*. at 502 (cleaned up). As to the *Miller* issue, *Carp* explained that the first factor clearly favored prospectivity, reasoning as follows:

> From our holding that the first factor of our state test for retroactivity focuses on whether a new rule of procedure implicates a defendant's guilt or innocence, it is apparent that the first factor clearly militates against the retroactive application of *Miller*. As *Miller* alters only the process by which a court must determine a defendant's level of moral culpability for purposes of *sentencing*, it has no bearing on the defendant's legal culpability for the offense of which the defendant has been duly convicted. [*Id*. at 501.]

*Carp* then explained that the second and third factors did not compel a different outcome, reasoning as follows:

> [I]t is apparent that these factors do not sufficiently favor the retroactive application of *Miller* so as to overcome the first factor's clear direction against its retroactive application. The old rule permitting life-without-parole sentences on the basis of the pre-*Miller* sentencing scheme established by the Legislature received in 1996 the specific approval of its constitutionality by our judiciary. Further, nothing in United States Supreme Court caselaw called into any question life-without-parole sentences for any juvenile offenders until *Graham* [*v Florida*, 560 US 48; 130 S Ct 2011; 176 L Ed 2d 825 (2010)] was decided in 2010, and even then *Graham* was specifically limited in its breadth to juveniles who committed nonhomicide offenses. . . .

> * * *

> On the basis of this state of the law, prosecutors across Michigan entirely in good faith relied on the old rule whenever they sought life-without-parole sentences for juvenile homicide offenders. Considering the constitutional approval the old rule received from both our judiciary and the United States Supreme Court, as well as the length of time during which the old rule prevailed—dating back to our state's

-10-

founding in 1837—the reliance on the old rule by Michigan prosecutors was significant and justified.

Conversely, we note that this is not a situation in which it can fairly be said that, as a group, the 334 defendants who would be entitled to resentencing if the rule in *Miller* were applied retroactively have "relied" on the old rule to their "detriment." [We] find it difficult to understand, and Carp and Davis themselves fail to identify, exactly what adverse action the 334 defendants have taken, or opted not to take, in "reliance" on the old rule (except perhaps to recognize and abide by the old rule as the then extant law of this state). . . . [*Id*. at 505-507 (citations and footnotes omitted).]

The Court accordingly held that "*Miller* is not entitled to retroactive application under Michigan's test for retroactivity." *Id*. at 512.

Two of the defendants in *Carp* filed respective petitions for a writ of certiorari in the United States Supreme Court. Meanwhile, while those petitions were pending, the United States Supreme Court decided *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016). In *Montgomery*, the Court ruled that under the federal retroactivity test set forth in *Teague*, *Miller* applied retroactively because it "announce[d] a new substantive rule." *Id*. at 198, 206. Shortly thereafter, the Court vacated the judgment of our Supreme Court in *Carp* and remanded the two cases to our Supreme Court for further consideration in light of *Montgomery*. *Davis v Mich*, 577 US 1186 (2016); *Carp v Mich*, 577 US 1186 (2016). On remand, our Supreme Court entered an order in each case vacating the respective defendant's sentence for first-degree murder and remanding to the trial court for a resentencing hearing in accordance with *Montgomery*. *People v Davis*, 499 Mich 903 (2016); *People v Carp*, 499 Mich 903 (2016).

A few years later, in *Parks*, our Supreme Court held "that mandatorily subjecting 18-year-old defendants convicted of first-degree murder to a sentence of life without parole violates the principle of proportionality derived from the Michigan Constitution, and thus constitutes unconstitutionally cruel punishment under Const 1963, art 1, § 16." *Parks*, 510 Mich at 268 (internal citations omitted). The Court recognized that it "part[ed] ways with the United States Supreme Court's jurisprudence to the extent the Court drew the line for defining the class of defendants that are entitled to individualized sentencing to those under the age of 18," but its "consideration of brain science to determine whether the Legislature's chosen sentence—mandatory life without parole—is cruel or unusual to impose on 18-year-olds who commit first-degree-murder is no different than the analysis the United States Supreme Court undertook a decade ago in *Miller*." *Id*. at 247-248. As a result of the new constitutional rule set forth in *Parks*, "18-year-old defendants convicted of first-degree murder are entitled to the full protections of MCL 769.25 and our caselaw, as opposed to the automatic sentencing scheme in MCL 750.316(1)." *Id*. at 268.

## C. ANALYSIS

Next, turning to the matter before us, as noted, the new rule created in *Parks* was based on the Michigan Constitution.[13] Therefore, only the state retroactivity test is governing.[14]

Once again, the state retroactivity test requires consideration of the following three elements:

> (1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice. [*Barnes*, 502 Mich at 273 (quotation marks and citation omitted).]

Our analysis of the state retroactivity test essentially is compelled by *Carp*. In this respect, I note that the United States Supreme Court, in its pair of orders vacating *Carp* after it decided *Montgomery*, stated, in relevant part:

> On petition for writ of certiorari to the Supreme Court of Michigan. Petition for writ of certiorari is granted. Judgment vacated, and case remanded to the Supreme Court of Michigan for further consideration in light of [*Montgomery*]. [*Davis*, 577 US at 1186; *Carp*, 577 US at 1186.]

This type of order is commonly referred to as a "GVR" because it grants, vacates, and remands. See Aaron-Andrew P. Bruhl, *The Supreme Court's Controversial GVRs—And an Alternative*, 107 Mich L Rev 711, 712 (2009) (explaining that GVR is "the procedure for summarily granting certiorari, vacating the decision below without finding error, and remanding the case for further consideration by the lower court" and that "[t]he GVR is most commonly used when the ruling below might be affected by one of the Court's recently rendered decisions, which was issued after the lower court ruled"). "The GVR order itself does not constitute a final determination on the merits; it does not even carry precedential weight." *Wright v State*, 256 So3d 766, 770 (Fla, 2018) (quotation marks and citation omitted). See also *People v Altantawi*, 507

---

[13] *Parks* characterized its holding as a "new line," *Parks*, 510 Mich at 248, and neither party in this Court disputes that *Parks* created a new constitutional rule.

[14] The prosecutor and amicus curiae on behalf of defendant, each advocate modifications to the state retroactivity test. However, this Court is obligated to apply the state retroactivity test that our Supreme Court has adopted. See *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016) (explaining that this Court "is bound to follow decisions by [our Supreme] Court except where those decisions have clearly been overruled or superseded and is not authorized to anticipatorily ignore our [Supreme Court's] decisions where [this Court] determines that the foundations of a Supreme Court decision have been undermined") (emphasis omitted).

Because *Teague*, i.e., the federal retroactivity test, applies to new rules compelled by the federal constitution, and because *Parks* was compelled by the state constitution, *Teague* does not apply here. See *Montgomery*, 577 US at 200 ("*Teague*'s conclusion establishing the retroactivity of new substantive rules is best understood as resting upon constitutional premises. That constitutional command is, like all federal law, binding on state courts.").

Mich 873; 954 NW2d 518, 519 (2021) (VIVIANO, J., *dissenting*) ("A GVR does not require a finding that error occurred and therefore does not create any precedent.").

Consistent with these principles, federal courts have held that a GVR does not affect the precedential value of aspects of the lower-court decision that are not the subject of the GVR. See, e.g., *United States v Adewani*, 467 F3d 1340, 1342 (CA DC, 2006) ("When the Supreme Court vacates a judgment of this court without addressing the merits of a particular holding in the panel opinion, that holding continues to have precedential weight, and in the absence of contrary authority, we do not disturb it. As the order vacating the judgment in *Thomas* remanded the case for further consideration in light of *Booker*, and as *Booker* did not address the escape issue, the Supreme Court's one-paragraph vacatur gives no cause for questioning our holding on that issue.") (cleaned up); *Endsley v Luna*, 750 F Supp 2d 1074, 1088 n 6 (CD Cal, 2010) ("[T]he Supreme Court has made clear that a GVR order is not a final disposition on the merits, but merely indicates that, in light of intervening developments, there is a reasonable probability that the Court of Appeals will reject a legal premise on which it relied and which may affect the outcome of the litigation. Thus, the Ninth Circuit and others have taken the position that a vacated judgment retains precedential authority on those issues not addressed in the order vacating it.") (cleaned up).[15]

Similar principles may apply at the state level. See, e.g., *Buell-Wilson v Ford Motor Co*, 73 Cal Rptr 3d 277, 336 (Cal Ct App, 2008) ("[D]espite the GVR order, *Buell–Wilson I* retains the ordinary precedential value of a published opinion of an intermediate appellate court and it remains the law of the case on all points other than the federal constitutional issue.") (quotation marks and citation omitted).

With these principles in mind, the GVRs in *Carp* and *Davis* remanded to our Supreme Court for further consideration in light of *Montgomery*. As noted, *Montgomery* concerned *Teague* and the federal retroactivity test. It did not concern the state retroactivity test or any other question of Michigan law. I agree with the United States Court of Appeals for the District of Columbia Circuit that such GVRs did not vacate the entire precedential value of *Carp*. Thus, the reasoning of that federal circuit has far more force in the instant context, in which the United States Supreme Court addressed the validity of a state judgment and not the validity of a federal judgment.[16] When

---

[15] This rule is not unanimous within the federal circuits. Some federal circuits apparently treat GVRs as resulting in "persuasive authority." See *United States v Young*, 846 Fed App'x 179, 182 (CA 4, 2021) ("Although the Supreme Court later vacated *Furlow* on different grounds, we—in line with some of our sister circuits—hold that the unchallenged portion of an opinion containing a vacated judgment is at least persuasive authority.").

[16] It is questionable whether the United States Supreme Court even has the authority, as a federal court, to rule that an analysis by a state court on a matter exclusively of state law no longer has precedential value within the state. See generally, *Quackenbush v Allstate Ins Co*, 517 US 706, 716-717; 116 S Ct 1712; 135 L Ed 2d 1 (1996) (discussing abstention doctrines).

the *Carp* and *Davis* GVRs are understood in context, they amount to a "vacate in part."[17] Thus, I would conclude that the decision of our Supreme Court in *Carp*, to the extent that it did not address the federal retroactivity test, remains binding precedent on Michigan courts.

Such a conclusion is consistent with our Supreme Court's recent treatment of *Carp* after *Montgomery* was decided. In that regard, our Supreme Court has cited *Carp* in multiple other cases. See *Stovall*, 510 Mich at 316-317 (quoting *Carp* for the proposition that "first-degree murder is almost certainly the gravest and most serious offense that an individual can commit under the laws of Michigan"); *Parks*, 510 Mich at 256 (quoting *Carp* for the same proposition); *Barnes*, 502 Mich at 270-272 (quoting *Carp* for the proposition that *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013), created a new procedural rule entitled only to prospective application); *People v Skinner*, 502 Mich 89, 102-103, 112; 917 NW2d 292 (2018) (citing and quoting *Carp* for various propositions).

This also is consistent with our Supreme Court's recent treatment of other remanded cases from the United States Supreme Court. In *People v Evans*, 491 Mich 1, 4; 810 NW2d 535 (2012), our Supreme Court held "that when a trial court grants a defendant's motion for a directed verdict on the basis of an error of law that did not resolve any factual element of the charged offense, the trial court's ruling does not constitute an acquittal for the purposes of double jeopardy and retrial is therefore not barred." The United States Supreme Court reversed, holding "that a midtrial acquittal in these circumstances is an acquittal for double jeopardy purposes as well." *Evans v Mich*, 568 US 313, 316; 133 S Ct 1069; 185 L Ed 2d 124 (2013). Shortly thereafter, our Supreme Court entered the following order in *Evans*:

> On order of the Court, in conformity with the mandate of the Supreme Court of the United States, the judgment and opinion of this Court dated March 26, 2012 (reported at 491 Mich 1; 810 NW2d 535) and the judgment of the Court of Appeals entered May 13, 2010 are VACATED. The judgment of the Circuit Court for the County of Wayne is AFFIRMED. [*People v Evans*, 493 Mich 959, 959-960 (2013).]

Thus, notwithstanding that the United States Supreme Court "reversed" the judgment of our Supreme Court, the latter court still entered a separate order vacating its "judgment and opinion." If the decision of the United States Supreme Court was understood as extinguishing the precedential value of the decision of our Supreme Court, this separate order would be illogical. That is, the fact that our Supreme Court entered a separate order extinguishing the precedential value of its earlier decision suggests that the decision of the United States Supreme Court did not do so.

---

[17] Moreover, a GVR is akin to a limited remand, and the lower court "should confine its ensuing inquiry to matters coming within the specified scope of the remand." *Gonzalez v Justices of Mun Court of Boston*, 420 F3d 5, 8 (CA 1, 2005) (quotation marks and citation omitted). For this additional reason, the scope of the GVRs in *Carp* and *Davis* should be understood as limited to our Supreme Court's analysis of the federal retroactivity test.

-14-

Similarly, in *People v Bryant*, 483 Mich 132, 134; 768 NW2d 65 (2009), our Supreme Court held that "the victim's statements to the police . . . constituted inadmissible testimonial hearsay." The United States Supreme Court ruled that the statements were not testimonial, vacated the judgment of our Supreme Court, and remanded to that Court to possibly decide "whether the statements' admission was otherwise permitted by state hearsay rules." *Mich v Bryant*, 562 US 344, 378; 131 S Ct 1143; 179 L Ed 2d 93 (2011). On remand, our Supreme Court entered the following order:

> On order of the Court, in conformity with the mandate of the Supreme Court of the United States the judgment and opinion of this Court dated June 10, 2009 (reported at 483 Mich 132; 768 NW2d 65) are VACATED. The judgment of the Circuit Court for the County of Wayne and the Court of Appeals are AFFIRMED. [*People v Bryant*, 489 Mich 87 (2011).]

Again, the fact that our Supreme Court entered a separate order extinguishing the precedential value of its earlier decision suggests that the decision of the United States Supreme Court did not do so.

It is true that in Michigan, "[a] Court of Appeals opinion that has been vacated by the majority of the Supreme Court without an expression of approval or disapproval of this Court's reasoning is not precedentially binding." *People v Akins*, 259 Mich App 545, 550 n 8; 675 NW2d 863 (2003). In other words, when our Supreme Court vacates an entire published opinion of this Court without an expression of approval or disapproval of this Court's reasoning therein, the opinion is not precedentially binding. At a superficial glance, this principle seems to suggest that the GVRs in *Carp* and *Davis* vacated the entire opinions of our Supreme Court, such that the opinion no longer has any precedential value. However, given the authorities that I have discussed specifically concerning GVRs, the GVRs in *Carp* and *Davis* are properly understood, at most, as vacating the opinions of our Supreme Court to the extent that it discussed the federal retroactivity test.[18]

---

[18] We recently rejected, albeit in an unpublished opinion, the defendant's argument that *Carp* had no precedential value because it was vacated by the United States Supreme Court:

> Defendant argues that *Carp* was vacated and thus has no precedential value. We disagree. Our Supreme Court's decision in *Carp* was vacated with respect to its ruling that *Miller* was not retroactive in light of the ruling by the United States Supreme Court in *Montgomery* that *Miller* indeed had retroactive application. Other aspects of *Carp*, including its ruling with respect to aiders and abettors, remain controlling. In fact, our Supreme Court itself has recently cited *Carp* for propositions unrelated to retroactivity, as has this Court. [*People v Taylor*, unpublished per curiam opinion of the Court of Appeals, issued March 9, 2023 (Docket No. 325834), at p 11 (citations omitted).]

-15-

Concluding that *Carp* remains binding precedent as to the state retroactivity test, I now turn to the merits of the matter before us. The first factor of our state's retroactivity test is the purpose of the new rule. *Barnes*, 502 Mich at 273. "Under the purpose prong, a law may be applied retroactively when it concerns the ascertainment of guilt or innocence; however, a new rule of procedure which does not affect the integrity of the fact-finding process should be given prospective effect." *People v Maxson*, 482 Mich 385, 393; 759 NW2d 817 (2008) (cleaned up). See also *Carp*, 496 Mich at 501 ("From our holding that the first factor of our state test for retroactivity focuses on whether a new rule of procedure implicates a defendant's guilt or innocence, it is apparent that the first factor clearly militates against the retroactive application of *Miller*."). The new rule of *Parks* plainly concerns sentencing rather than the ascertainment of guilt or innocence.

Defendant argues that the fact-finding process is implicated because a sentencing court must make factual findings at a *Miller* hearing. Defendant cites *McConnell v Rhay*, 393 US 2, 3-4; 89 S Ct 32; 21 L Ed 2d 2 (1968), in which, pursuant to the *Linkletter* test, the United States Supreme Court retroactively applied a new rule of criminal procedure that was relevant only to the sentencing process. But in *Carp*, our Supreme Court rejected an argument similar to that made by defendant here. *Carp* noted that the new constitutional rule being applied retroactively in *McConnell* concerned the right to counsel. *Carp*, 496 Mich at 498-499. *McConnell* did not necessitate the conclusion that rules implicating the fact-finding process at sentencing were "on equal footing with rules implicating the fact-finding process for guilt or innocence." *Id*. at 499. Moreover, *Carp* noted that, in previously applying the state retroactivity test, our Supreme Court has referred to the integrity of the fact-finding process only "in the context of determining a defendant's guilt or innocence." *Id*., citing, *inter alia*, *Maxson*, 482 Mich at 393-394, and *People v Sexton*, 458 Mich 43, 62; 580 NW2d 404 (1998).

*Carp* further reasoned:

To the extent that *McConnell* may have viewed the "fact-finding process" as continuing throughout sentencing, we respectfully disagree and decline to adopt such an expansive view for purposes of our separate and independent test for retroactivity. It reflects an understanding of retroactivity that is no longer subscribed to by the United States Supreme Court and an understanding to which this Court has never subscribed. There is utterly no obligation on our part to forever maintain the *Linkletter* test in accordance with every past federal understanding when the test is now defunct for federal purposes and this Court, although initially relying on *Linkletter* to formulate our state test for retroactivity, has added its own interpretations to that test. Instead, the general principle of nonretroactivity for new rules of criminal procedure, to which Michigan adheres and which informs this state's retroactivity analysis, is properly served, in our judgment, by applying retroactively only those new rules of procedure that implicate the guilt or innocence of a defendant. [*Carp*, 496 Mich at 499-500.]

*Carp*'s analysis of the first factor applies by analogy here. The new rule of *Parks* does not implicate a defendant's guilt or innocence. *Parks* instead only pertains to sentencing. The first factor thus counsels against the retroactive application of *Parks*. Again, I emphasize the fact that the United States Supreme Court later determined in *Montgomery* that *Miller* applies retroactively

under the federal retroactivity test is not controlling with respect to the application of the state retroactivity test in determining the retroactivity of the new rule of *Parks*, which is based solely on the Michigan Constitution.

The second factor concerns general reliance on the old rule, and the third factor concerns the effect on the administration of justice. *Barnes*, 502 Mich at 273. "It is worth noting that the second and third factors can be dealt with together, because the amount of past reliance will often have a profound effect upon the administration of justice." *Id*. at 273 n 6 (cleaned up). Also, "when the first factor 'strongly supports one side or the other of the retroactivity question,' it is to be afforded 'heightened weight,' meaning 'the second and third factors would need to favor retroactive application to a substantial degree' to overcome the first factor." *Id*. at 273 n 7, quoting *Carp*, 496 Mich at 502-503.

Therefore, because the first factor clearly counsels against the retroactive application of *Parks*, the second and third factors would need to favor retroactive application to a substantial degree to overcome the first factor. In my view, the second and third factors do not favor retroactive application to a substantial degree. On the contrary, the second and third factors counsel against the retroactive application of *Parks*.

For almost half a century, Michigan prosecutors relied in good faith on a decision of our Supreme Court upholding the constitutionality of life-without-parole sentences for defendants convicted of first-degree murder. See *Parks*, 510 Mich at 255 n 9 (noting that our Supreme Court held in 1976 that a mandatory life-without-parole sentence for felony murder did not violate Const 1963, art 1, § 16). A similar conclusion regarding reliance was reached in *Carp*, in which our Supreme Court noted that "prosecutors across Michigan entirely in good faith relied on the old rule whenever they sought life-without-parole sentences for juvenile homicide offenders." *Carp*, 496 Mich at 506.

Also, retroactive application of *Parks* on collateral review would have a detrimental effect on the administration of justice. As the prosecutor notes, such retroactive application would likely mean that every living criminal defendant who was 18 years old when committing first-degree murder would be eligible for relief. In *Carp*, our Supreme Court noted the

> considerable financial, logistical, and practical barriers placed on prosecutors to recreate or relocate evidence that had previously been viewed as irrelevant and unnecessary. This process would not, in our judgment, further the achievement of justice under the law because it would require in many instances that the impossible be done, and if it could not be, a heavy cost would be incurred by society in the form of the premature release of large numbers of persons who will not have fully paid their legal debt to society, many of whom as a result might well continue to pose a physical threat in particular to individuals living in our most vulnerable neighborhoods. [*Id*. at 510.]

Similarly, in his dissent in *Stovall*, JUSTICE ZAHRA referred to the instant case and alluded to the effect on the administration of justice that the retroactive application of *Parks* on collateral review would entail:

In *People v Poole*, a bare majority of this Court has set the stage for applying *Parks* retroactively, such that defendants who were 18 years old when they committed murder and were later sentenced to mandatory life without parole may challenge their sentences through motions for relief from judgment. If the Court of Appeals accepts the majority's invitation to extend *Parks* in this way, trial courts will be faced with a slew of resentencings. This will exhaust precious judicial resources in an untold number of cases and will not only open up old wounds for the families of victims, but will also subject them to a whole new trauma—the prospect that their loved-ones' killers will be released from incarceration. [*Stovall*, 510 Mich at 359 (ZAHRA, J., *dissenting*).]

Further, there is reason to believe that the holding in *Parks* will be extended to defendants older than the age of 18. In *Parks*, our Supreme Court noted that "brain science" suggests that "the prefrontal cortex—the last region of the brain to develop, and the region responsible for risk-weighing and understanding consequences—is not fully developed until age 25." *Parks*, 510 Mich at 251. Then-JUSTICE CLEMENT noted as follows in her *Parks* dissent:

I would not be surprised if the Court extends its current line in the near future. The science defendant offers indicates that there is significant neurological development until age 25, and while the majority acknowledges this science, the majority today extends Miller's and Montgomery's holdings only to offenders who are 18 years old. I assume that in the coming years we will hear cases arguing that we should extend Miller's protection to those in their early twenties as well. [*Parks*, 510 Mich at 298 (CLEMENT, J., *dissenting*).]

Indeed, within months after the issuance of *Parks*, our Supreme Court clearly indicated that it is considering an expansion of *Parks* to older defendants and is providing this Court with the initial opportunity to do so. See, e.g., *People v Gelia*, ___ Mich ___, ___; 984 NW2d 185, 185 (2023) (remanding to this Court for reconsideration in light of *Parks* with regard to a defendant over the age of 18 when he committed first-degree murder); *People v Rush*, ___ Mich ___, ___; 982 NW2d 179, 179 (2022) (same); *People v Adamowicz*, ___ Mich ___, ___; 982 NW2d 176, 176 (2022) (same).[19] But even if the holding in *Parks* will not be expanded beyond 18-year-old

---

[19] As this Court observed on second remand, the defendant in *Adamowicz* was 21 years old when he committed first-degree murder. *People v Adamowicz* (*On Second Remand*), ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 330612); slip op at 1.

In my view, it is reasonable to infer from the *Parks* majority's own reasoning, as well as from its multiple orders remanding cases to this Court, that the holding in *Parks* is likely to be extended, perhaps incrementally, beyond 18-year-old defendants. If our Supreme Court continues to issue incremental expansions of its jurisprudence in this area, then retroactive application of this caselaw on collateral review would have an even more severe effect on the administration of justice. That is, if this caselaw is applied retroactively, then the detrimental effect on the administration of justice would incrementally worsen as well because an ever-increasing number of sentences would have to be vacated.

defendants, for the reasons stated earlier, the second and third factors of the state retroactivity test counsel against retroactive application. Overall, the analysis under the state retroactivity test compels the conclusion that *Parks* should not be applied retroactively on collateral review.[20]

Finally, having concluded that *Parks* should not be applied retroactively, I briefly address two additional arguments raised by defendant. First, defendant notes that in *People v Bullock*, 440 Mich 15, 21, 37, 41-42; 485 NW2d 866 (1992), our Supreme Court held that a mandatory life-without-parole sentence for the offense of possession of 650 grams or more of a mixture containing cocaine was cruel or unusual punishment in violation of Const 1963, art 1, § 16. Defendant further notes that *Bullock* stated that its holding applied to the defendants in that case and to "all others who have been sentenced under the same penalty and for the same offense . . . ." *Id.* at 42. Defendant also observes that in *Stovall*, 510 Mich at 307-308, our Supreme Court granted the juvenile defendant relief on collateral review after determining that a sentence of life imprisonment with the possibility of parole for second-degree murder violated the prohibition on cruel or unusual punishment set forth in Const 1963, art 1, § 16. Defendant argues that, in light of these cases, this Court is required to apply *Parks* retroactively on collateral review because any decision regarding cruel or unusual punishment under Const 1963, art 1, § 16 must be applied retroactively.

Defendant's reliance on *Bullock* and *Stovall* is misplaced. Initially, unlike *Bullock* and *Stovall*, our Supreme Court's holding in *Parks* does not categorically bar a penalty for a class of offenders. Instead, *Parks* requires only that the sentencing court follow a certain process before imposing that penalty. See *Poole II*, 977 NW2d at 532 n 2 (CLEMENT, J., dissenting) ("[U]nder *Parks*, it is only *mandatory* life without parole that is unconstitutional for 18-year-old offenders. Just as with juvenile offenders, courts can sentence 18-year-old offenders to life without parole. See MCL 769.25."). More importantly, there is no language in *Parks* similar to that contained in *Bullock* specifying that the holding applies to all persons who have been sentenced to a particular penalty for a certain offense. Nor is there any such language in *Stovall*.[21] Indeed, our Supreme Court's order in *Poole II* remanding the case to this Court made clear that it was for this Court to determine whether defendant is entitled to relief under *Parks*. See *Poole II*, 977 NW2d at 531 (directing this Court to "determine *whether* defendant is entitled to relief" under *Parks* and to "determine what remedy, *if any*, is available to defendant under *Parks*") (emphasis added). Such

---

[20] At oral argument, defendant asserted that the state retroactivity test must be at least as generous to criminal defendants as the federal retroactivity test, and because *Miller* is retroactive under the federal retroactivity test, it follows that *Parks*—which essentially tracks the same reasoning as *Miller*—must be retroactive under the state retroactivity test. I disagree. I am unaware of any authority to suggest that state courts are required to have any state retroactivity test whatsoever, much less one that is at least as generous to criminal defendants as the federal retroactivity test. To the contrary, "whether or not a new rule of state law may be applied retroactively is a pure state law question." *Burleson v Saffle*, 278 F3d 1136, 1140 (CA 10, 2002). "[T]he decision of a state court to limit the retroactive effect of a rule involving state law does not raise a federal question." *Benson v Carter*, 396 F2d 319, 323 (CA 9, 1968).

[21] I also note that *Stovall*, which seemingly established a new rule of state constitutional law, would have had to apply to the *Stovall* defendant himself; otherwise, *Stovall* would have arguably been an advisory opinion. See *Wayne Co v Hathcock*, 471 Mich 445, 484 n 98; 684 NW2d 765 (2004).

-19-

an order would be nonsensical if defendant was automatically entitled to relief under *Parks*, particularly where our Supreme Court had already granted leave to appeal and heard oral argument in this matter, and thus was fully appraised of the relevant circumstances of the case. Therefore, defendant's suggestion that this Court should automatically grant him relief, without applying the state retroactivity test required by caselaw, lacks merit.

Second, defendant argues that his mandatory life-without-parole sentence is invalid because of new scientific evidence regarding "the infirmities of the 18-year-old brain." Defendant states that, at the time of his offense, he "was an 18-year-old experiencing the impulsivity, recklessness, and deficiency in judgment associated with youth." Defendant thus asks for relief on the basis of "the new scientific knowledge recognized in *Parks*." However, our Supreme Court in *Parks* has already analyzed the scientific evidence and concluded that the imposition of mandatory life-without-parole sentences on 18-year-old defendants convicted of first-degree murder violates Const 1963, art 1, § 16. Defendant seems to be asking this Court to analyze the scientific evidence anew to reach the same conclusion reached by our Supreme Court in *Parks*, but as the prosecutor notes, that ship already has sailed. Our Supreme Court issued its decision in *Parks*, and the question before this Court on remand from our Supreme Court is whether defendant is entitled to relief under *Parks*. As discussed, the question now before this Court concerns whether *Parks* applies retroactively on collateral review, and for the reasons explained, it does not.

## IV. RESPONSE TO THE MAJORITY

The majority reasons that "[t]he holding in *Parks*, as in *Miller*, is substantive, not procedural. Therefore, *Carp*'s analysis of retroactivity, constructed upon the faulty premise that *Miller*'s rule was a procedural rule, does not control the outcome here." Respectfully, this reflects a fundamental misunderstanding of the relationship between federal and state constitutional law at issue in this case. The words "substantive" and "procedural" are particular terms of art used in the federal *Teague* analysis for determining whether a new rule of federal constitutional law is required to be applied retroactively under the federal constitution. See, e.g., *Schriro v Summerlin*, 542 US 348, 351-352; 124 S Ct 2519; 159 L Ed 2d 442 (2004). "New substantive rules generally apply retroactively," *id*. at 351 (emphasis omitted), while "[n]ew rules of procedure, on the other hand, generally do not apply retroactively," *id*. at 352. For example, while *Carp* held that *Miller* set forth a procedural rule, *Carp*, 496 Mich at 495, *Montgomery* held that *Miller* set forth a substantive rule, *Montgomery*, 577 US at 212, and, as a result, that aspect of *Carp* was overruled.

With regard to new rules of state constitutional law, in contrast, our state does not apply a *Teague* analysis but instead applies a completely separate analysis derived from *Linkletter*. See *Carp*, 496 Mich at 496. That is, the *Linkletter*-based analysis applies to new rules of state constitutional law. See *People v Hampton*, 384 Mich 669, 673-675; 187 NW2d 404 (1971). Thus, because this case involves a new rule of state constitutional law, only the *Linkletter*-based analysis is implicated. See *id*. Consequently, whether the new rule in *Parks* is "substantive" or "procedural" is entirely beside the point because this case does not implicate *Teague* whatsoever.[22]

---

[22] To make the matter obvious, the words "substantive" and "procedural" appear dozens of times in the section of *Carp* titled "FEDERAL RETROACTIVITY," but do not appear once in the section of *Carp* titled "STATE RETROACTIVITY."

In other words, the question before us is not whether the new rule in *Parks* is "substantive" or "procedural," but whether the new rule in *Parks* is retroactive under the *Linkletter*-based state retroactivity analysis. The majority simply ignores this fundamental issue and errs by holding that *Parks* applies retroactively. It does so without even engaging in the *Linkletter*-based state retroactivity analysis. Indeed, given the majority's repeated use of the word "substantive" to justify its holding, I am altogether unclear whether the majority is holding that *Parks* is required to be applied retroactively under the federal constitution or the state constitution.[23]

Further, more importantly, the majority reflects a mistaken understanding of our obligation to follow judicial precedent. As our Supreme Court has explained, "[t]he Court of Appeals is bound to follow decisions by this Court except where those decisions have clearly been overruled or superseded and is not authorized to anticipatorily ignore our decisions where it determines that the foundations of a Supreme Court decision have been undermined." *Associated Builders & Contractors*, 499 Mich at 191-192 (emphasis omitted). While the majority believes that the foundations of *Carp*'s discussion of the state retroactivity test were undermined by *Montgomery*,[24]

---

[23] With that in mind, I do not particularly fault the majority for its suggestion that a retroactivity analysis is required under MCR 6.508(D)(3)(b)(*iv*). In *Stovall*, our Supreme Court stated, without elaboration, that "[r]eading [MCR 6.502(G)(2)] more narrowly to require that the defendant's claims fall squarely within a retroactive change in law would effectively merge the procedural hurdle in MCR 6.502(G)(2) with the merits inquiry in MCR 6.508(D), rendering one of those provisions nugatory." *Stovall*, 510 Mich at 310. Thus, our Supreme Court seemingly left unresolved the question whether the retroactivity analysis should be conducted under MCR 6.502(G)(2) or MCR 6.508(D).

Incidentally, I note that while our Supreme Court did not explain the basis for its reasoning in this regard, its reasoning could not have been grounded in the plain language of the court rules. For example, a 17-year-old defendant who is sentenced to a 60-year prison term for murder may file a successive motion for relief from judgment on the basis of *Miller* and *Montgomery*, MCR 6.502(G)(2). Then, a merits inquiry would depend on whether the 60-year prison term is the "functional equivalent" of a life sentence, or perhaps whether the Eighth Amendment issue was waived at an earlier stage of the proceedings, MCR 6.508(D)(3)(b)(*iv*). See *Starks v Easterling*, 659 Fed App'x 277, 280 (CA 6, 2016); *Davis v Mich*, 577 US 1186; 136 S Ct 1356; 194 L Ed 2d 339 (2016) (Thomas, J., *concurring*). As this simple example illustrates, indeed MCR 6.502(G)(2) may be interpreted as requiring that the defendant's claims "fall squarely within a retroactive change in the law," without rendering either court rule nugatory.

[24] *Montgomery* did not even undermine *Carp*'s discussion of the state retroactivity test, much less overrule it. As noted in footnote 22, *supra*, the procedural/substantive distinction had no role whatsoever in *Carp*'s discussion of the state retroactivity test.

-21-

the fact remains that this aspect of *Carp* has not clearly been overruled or superseded.[25]  Thus, we are obligated to follow it.[26]

## V.  CONCLUSION

Because *Parks* does not apply retroactively on collateral review, defendant has failed to establish that his sentence is invalid.  Accordingly, he has failed to establish actual prejudice that would entitle him to relief from judgment under MCR 6.508(D)(3)(b)(*iv*).  Therefore, I would vacate the trial court's order returning to defendant his third motion for relief from judgment without accepting it for filing.  I also would remand this case to that court to accept the motion for filing and to deny the motion consistent with this dissent.

/s/ Michael J. Riordan

---

[25] The implied rationale of the majority in footnote seven—that *Parks* is likely retroactive because our Supreme Court remanded this case to us while including vague, broad language in *Parks* itself about unconstitutional sentences—would open the floodgates for new rules of state constitutional law to be applied retroactively, upsetting both established law and the reliance that litigants in our state place on it.

Moreover, I am unclear as to the relevance of JUSTICE CAVANAGH's question about retroactivity cited in that same footnote.  We are obligated to follow the written precedent of our Supreme Court, not implications by individual justices during oral argument.  In any event, the fact that our Supreme Court was informed during the *Parks* oral argument that it could immediately hold that *Parks* was retroactive, but the Court ultimately did not do so, weighs against the majority's holding that *Parks* is retroactive.

[26] Thus, in a nutshell, the majority's holding is without precedential or guiding value for future courts charged with the task of determining the retroactivity of our Supreme Court's rulings, including that in *Parks*.